[No. 49888-6-I. Division One. April 7, 2003.]

LARRY STONE, *Respondent*, v. SOUTHWEST SUBURBAN SEWER DISTRICT, *Defendant*, JACK SANDERS, ET AL., *Appellants*.

*Eric R. Stahlfeld*, for appellants.

*Douglas R. Roach* and *Linda Y. Chu* (of *Groff & Murphy, P.L.L.C.*), for respondent.

Cox, A.C.J. — RCW 35.91.020 provides that a sewer district and certain other municipalities may contract with owners of real estate for the construction of water or sewer facilities to serve the area of the owners' real estate. The statute further provides that such municipalities may provide for the reimbursement of the owners who construct such facilities by any owner of real estate who did not contribute to the original cost of the facilities and who subsequently taps onto them (latecomers). The measure of the reimbursement by latecomers is the "fair pro rata share of the cost of the construction."[1]

The primary issue we must decide is whether the phrase "fair pro rata share of the cost of the construction" in the statute is directed to fair apportionment of the cost of construction among latecomers rather than to the "fair cost" of construction of the facilities. Because the trial court properly read the statute to mean that the word "fair" modifies the words "pro rata share," not "cost," summary judgment in favor of Larry Stone, the builder of the facilities, was proper. We affirm.

The Southwest Suburban Sewer District contracted with Stone to build a sewer facility extension. The contract also provided that Stone would comply with certain construction standards and convey the completed sewer facility to the District prior to connection with the existing sewer system. Significantly, the contract further provided for the execution and recording of a reimbursement agreement. The agreement committed the parties to be bound by the municipal water and sewer facilities act, RCW 35.91.010-.050, and provided for a 15-year period during which latecomers would reimburse Stone for "a fair pro rata share of the cost of the construction of [the] extension." The obligation of these latecomers is secured by a lien against their respective properties.

Stone initially estimated that the total cost per household for construction of the extension would be $6,250, and

---

[1] RCW 35.91.020.

notices sent to potentially affected property owners reflected that figure. However, the completed project turned out to cost more than twice the estimated cost per household.

The parties dispute whether the cost overruns were justified. The District's Board of Commissioners determined that Stone's "lack of knowledge and competency" in installing the sewer line created problems that more than doubled the cost of construction. The District also determined that the project cost should have been $62,266.63. Based on these determinations, the District determined that the pro rata share for each of the properties owned by latecomers should be $6,226.66.

Stone rejected this determination and sought a writ of mandamus requiring the District to agree to require latecomers to cover his actual costs of construction. The District held a hearing on the reimbursement issue and then tabled the matter to allow the objecting property owners to obtain counsel. Subsequently, the District decided that governing law required it to assess each property according to the actual costs of constructing the sewer facility. Thus, the final cost per household was $12,411.66.

Jack Sanders and other property owners (Sanders) then filed their application for a writ of mandamus, asking the trial court to compel the District to authorize a reimbursement agreement assessing them only a "fair and reasonable" pro rata share of the costs of construction. They objected to paying, in their view, the "cost of the developer's negligence." The court granted Stone's motion to intervene and consolidated the two mandamus actions.

Stone moved for summary dismissal of Sanders's writ action. Stone also moved to strike a document submitted in support of Sanders's response to the summary judgment motion. The trial court granted both motions.

Fair Pro Rata Share of the Cost of Construction

Sanders argues that the trial court erred in granting summary judgment dismissal of his application for a writ of mandamus. We disagree.

■ We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[2] We review questions of law de novo.[3]

No one argues that genuine issues of material fact exist. And we see none.

■ The dispositive issue is whether RCW 35.91.020 requires the District to calculate a "fair pro rata share" of the cost of construction among latecomers who did not contribute to the original cost of construction of the facilities rather than calculating the "fair cost of construction" of the facilities. That is a question of law that we review de novo.

Sanders argues that the trial court failed to correctly read the statute. He argues that the phrase "fair pro rata share of the cost of the construction" should be interpreted to allow the District to determine whether the actual costs of construction can be fairly imposed on latecomers. This is not a fair reading of the statute.

■ The construction of a statute is a question of law that we review de novo.[4] When reading a statute, we will not construe language that is clear and unambiguous, but will instead give effect to the plain language without regard to rules of statutory construction.[5] In considering a statute, we must "assume that the legislature means exactly what it says,"[6] and we will "give words . . . their plain and ordinary meaning."[7]

---

[2] CR 56(c).

[3] *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 813, 854 P.2d 1072 (1993).

[4] *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996).

[5] *Allan v. Dep't of Labor & Indus.*, 66 Wn. App. 415, 418, 832 P.2d 489 (1992).

[6] *Morgan v. Johnson*, 137 Wn.2d 887, 891-92, 976 P.2d 619 (1999).

[7] *State v. Keller*, 98 Wn. App. 381, 383-84, 990 P.2d 423 (1999).

 The statute states in relevant part that a municipality may:

> provide for a period of not to exceed fifteen years for the reimbursement of such owners and their assigns by any owner of real estate who did not contribute to the original cost of such water or sewer facilities and who subsequently tap onto or use the same of a *fair pro rata share of the cost of the construction of said water or sewer facilities*, including not only those directly connected thereto, but also users connected to laterals or branches connecting thereto, subject to such reasonable rules and regulations as the governing body of such municipality may provide or contract, and notwithstanding the provisions of any other law.[8]

The term "fair pro rata share" appears once more in the statute, in a second section:

> Whenever the cost, or any part thereof, of any water or sewer improvement, whether local or general, is or will be assessed against the owners of real estate and such water or sewer improvement will be connected into or will make use of, contracted water or sewer facilities constructed under the provisions of this chapter and to the cost of which such owners, or any of them, did not contribute, there shall be included in the engineer's estimate before the hearing on any such improvement, separately itemized, and in such assessments, a sum equal to the amount provided in or computed from such contract as the *fair pro rata share* due from such owners upon and for such contracted water or sewer facilities.[9]

Sanders argues that the plain language of the statute allows reimbursement of a fair share of the cost of construction and does not require each property owner to pay a proportional share of the actual cost of construction. We disagree.

The plain language of the statute states that the latecomers must pay a *fair pro rata share* of the cost of construction. Specifically, the most natural and grammatically correct

---

[8] RCW 35.91.020 (emphasis added).

[9] RCW 35.91.050 (emphasis added).

reading of the statute is to conclude that "fair" modifies "pro rata share," not "cost of construction." The statute does not say that latecomers must pay a pro rata share of the *fair cost of construction*. If the legislature intended to say the latter, it could easily have done so. It did not. We will not rewrite the statute as Sanders requests.

Sanders argues that this understanding of the statute would lead to absurd results. Again, we disagree.

Our reading of the statute effectuates the statutory purpose of allowing a municipality the discretion to determine what distribution of costs among the affected properties is fair. For example, if all of the properties but one served by a sewer facility were developed as single-family homes, and the last as an apartment complex, a municipality might determine that a "fair pro rata share" of the costs of construction might take into consideration these different uses and benefits to the properties. Thus, our reading of the statute does not lead to absurd results.

The parties dispute, on policy grounds, whether our reading of the statute permits cost overruns of the type alleged here. We will not address this dispute. The language of the statute is clear, and the wisdom of the policy choices of the statute is better left to the legislature.

We affirm the trial court's grant of summary judgment.

The remainder of this opinion has no precedential value and will be filed for public record in accordance with the rules governing unpublished opinions.

COLEMAN and AGID, JJ., concur.