248 P.3d 592 (2011)
In the Matter of the DETENTION OF John Warren BERRY, Appellant.
No. 64226-0-I.
Court of Appeals of Washington, Division 1.
March 7, 2011.
*593 Thomas M. Kummerow, Washington Appellate Project, Seattle, WA, for Appellant.
Malcolm Ross, Attorney General of Washington, Seattle, WA, for Respondent.

PUBLISHED IN PART
ELLINGTON, J.
¶ 1 John Berry challenges his commitment as a sexually violent predator, in part because the court admitted an expert's testimony without first conducting a Frye[1] hearing. But because the evidence implicated no novel scientific principle or procedure, no Frye hearing was required, and we affirm. In the unpublished portion of this opinion, we reject Berry's argument that he had an irreconcilable conflict with his assigned counsel.

BACKGROUND
¶ 2 Berry has been convicted of five sexually violent offenses, including second degree rape by forcible compulsion in 1975, second degree rape and kidnapping with a sexual *594 motivation in 1979, and first degree rape with a deadly weapon and kidnapping with a sexual motivation in 1988. In February 2003, before Berry's release from prison on the 1988 convictions, the State filed a petition to commit Berry as a sexually violent predator (SVP) under chapter 71.09 RCW.
¶ 3 Before trial, Berry moved for summary judgment or, in the alternative, a Frye hearing to determine the validity of the State's expert's diagnosis of "paraphilia not otherwise specified (NOS) nonconsent." The court denied the motion.
¶ 4 At trial, the State presented the testimony of Dr. Amy Phenix, a clinical psychologist specializing in the evaluation of sex offenders. Dr. Phenix testified that Berry suffers from a personality disorder (severe antisocial personality disorder) and a mental abnormality (paraphilia NOS nonconsent, with sadistic traits), both of which cause him serious difficulty in controlling his behavior. Her diagnoses were based on Berry's criminal history, previous psychological or psychiatric evaluations, interviews she conducted with Berry in 2005 and 2009, and the criteria found in the American Psychiatric Association Diagnostic and Statistical Manual for Mental Disorders, Text Revision (4th ed. 2000) (DSM-IV-TR). Dr. Phenix also relied upon various actuarial instruments for her conclusion that Berry was at high risk to reoffend if not confined.
¶ 5 Dr. Richard Wollert, a clinical psychologist specializing in the treatment of sex offenders, testified for Berry. He agreed that Berry has antisocial personality disorder. But Dr. Wollert testified that the paraphilia NOS nonconsent diagnosis is not commonly accepted in the psychological community, not defined in psychology, unreliable, and did not apply to Berry in any event.
¶ 6 A jury found Berry to be an SVP, and the court entered an order of commitment. He appeals.

DISCUSSION
¶ 7 Under Kansas v. Crane,[2] evidence is constitutionally sufficient to commit a sex predator only if it is "sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." The same standard applies under the Washington Constitution under In re Detention of Thorell.[3]
¶ 8 "Paraphilia NOS nonconsent" is a condition that subjects a person to recurrent, intense sexually arousing fantasies, urges or behaviors involving rape.[4] Berry argues this diagnosis does not satisfy the Crane standard because it does not satisfy Frye.
¶ 9 A similar argument was presented in In re Detention of Post.[5] But there, the appellant failed to challenge the evidence at trial and we declined to address the issue:
Post improperly attempts to transform that which should have been raised as an evidentiary challenge in the trial court into a question of constitutional significance on appeal. In point of fact, Post attempts to sidestep the fact that he did not seek a Frye hearing in the trial court, and, thus, has not preserved an evidentiary challenge for review.[[6]]
Like Post, Berry attempts to cast an evidentiary issue as one of constitutional significance. But unlike Post, Berry requested a Frye hearing. The issue is thus whether the hearing was properly denied.

Standard of Review
¶ 10 Our Supreme Court has observed that "[i]t is not clear what standard of review should be applied to a trial court's decision not to conduct a Frye hearing at *595 all."[7] In this case, the record indicates the court denied Berry's motion either because it concluded the diagnosis was already generally accepted in the scientific community or because the nature of the evidence simply was not subject to Frye.[8] In the former situation, de novo review is appropriate because the court resolved for itself the same question ultimately addressed after a Frye hearing.[9] The latter proposition presents a question of law. In either case, therefore, the de novo standard applies.[10]

ANALYSIS
¶ 11 Frye applies when a party seeks to admit "evidence based upon novel scientific procedures."[11] Such evidence is admissible "`only if that theory or principle has achieved general acceptance in the relevant scientific community.'"[12]Frye's "`core concern ... is only whether the evidence being offered is based upon established scientific methodology.'"[13]
¶ 12 We conclude Frye does not apply to Dr. Phenix's diagnosis. First, the proper focus of Frye is the science upon which the expert's opinion is founded. Here, the science at issue is standard psychological analysis. Dr. Phenix rendered her opinion based on Berry's offense and treatment history, his previous evaluations, interviews with Berry, the psychological literature including the DSM-IV-TR, and her own experience in the field. As the Supreme Court observed in In re Personal Restraint of Young nearly 20 years ago, nothing about this is novel:
The sciences of psychology and psychiatry are not novel; they have been an integral part of the American legal system since its inception. Although testimony relating to mental illnesses and disorders is not amenable to the types of precise and verifiable cause and effect relation petitioners seek, the level of acceptance is sufficient to merit consideration at trial.[[14]]
Berry presents nothing new about psychological/psychiatric evaluation or the paraphilia NOS nonconsent/rape diagnosis to call Young's holding into question.
¶ 13 The courts of many other states have held that expert testimony from psychologists and psychiatrists about a sex offender's mental illness or abnormality is not subject to Frye.[15] The courts of this state have *596 repeatedly upheld SVP commitments based upon this diagnosis.[16]
¶ 14 Though Berry identifies scientific criticism of the criteria and reliability of the diagnosis, he does not establish that it is no longer generally accepted. Dr. Phenix testified that critics, including Dr. Wollert, were among "two or three psychologists" who decry the diagnosis.[17]
¶ 15 Berry relies heavily on the fact that "paraphilia NOS nonconsent" is not included in the DSM-IV-TR. But the Young court specifically rejected the argument that paraphilia NOS nonconsent/rape was an "invalid" diagnosis, offensive to substantive due process, because it did not appear in the then-current edition of the DSM:
"The fact that pathologically driven rape, for example, is not yet listed in the DSM-III-R does not invalidate such a diagnosis. The DSM is, after all, an evolving and imperfect document. Nor is it sacrosanct. Furthermore, it is in some areas a political document whose diagnoses are based, in some cases, on what American Psychiatric Association ... leaders consider to be practical realities. What is critical for our purposes is that psychiatric and psychological clinicians who testify in good faith as to mental abnormality are able to identify sexual pathologies that are as real and meaningful as other pathologies already listed in the DSM."[[18]]
Indeed, both Drs. Phenix and Wollert testified that rape paraphilia was proposed for inclusion in the DSM and rejected because of concern that criminal defendants would avoid punishment by claiming the affliction. That the diagnosis is nonetheless generally accepted is evident from the inclusion of paraphilic rape in the casebook "learning companion" to the DSM-IV.[19]
¶ 16 Moreover, as the State points out, "paraphilia NOS" does appear in the DSM-IV-TR. The DSM-IV-TR defines paraphilia as "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving (1) nonhuman objects, (2) the suffering or humiliation of oneself or one's partner, or (3) children or other nonconsenting persons that occur over a period of at least 6 months."[20] "Paraphilia not otherwise specified" is a "residual category in the DSM-III-R which encompasses both less commonly encountered paraphilias and those not yet sufficiently described to merit formal inclusion in the DSM-III-R."[21] The DSM-IV-TR provides a number of examples of paraphilia NOS, but clearly states that the category is "not limited to" that list.[22] The omission of "nonconsent" or "rape" from these examples does not prove it is an invalid diagnosis. In fact, as Young points out, the seminal 1990 article on rape paraphilia "reviews the pertinent scientific literature and concludes that `[t]he weight of scientific evidence, therefore, supports rape of adults as a specific category of paraphilia.'"[23]
*597 ¶ 17 The trial court properly denied Berry's motion for a Frye hearing. His arguments thus went to the weight of the evidence, not its admissibility.[24] Berry cross-examined Dr. Phenix about the diagnosis and presented his own expert to testify to its shortcomings. There was no evidentiary error and no violation of due process.
¶ 18 We affirm.
¶ 19 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.
WE CONCUR: SCHINDLER and GROSSE, JJ.
NOTES
[1] Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923).
[2] 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002).
[3] 149 Wash.2d 724, 72 P.3d 708 (2003).
[4] See Report of Proceedings (RP) (Sept. 17, 2009) at 326-333 (testimony of Dr. Phenix).
[5] 145 Wash.App. 728, 754-56, 187 P.3d 803 (2008).
[6] Id. at 755-56, 187 P.3d 803 (footnote omitted).
[7] State v. Gregory, 158 Wash.2d 759, 830, 147 P.3d 1201 (2006).
[8] In denying Berry's motion, the court expressed its reasoning as follows: "[W]ith respect to the diagnosis of paraphilia not otherwise specified and whether or not there needs to be a Frye hearing on that, obviously, I've tried a number of these cases and that is a diagnosis I hear. I understand there is a debate with respect to how it is applied, but I don't believe, and I'm going back to the case law as well, specifically In re the Detention of Young, I don't believe that a Frye test is the arena to determine whether or not this diagnosis is appropriate and whether or not it can even be offered to the jury. I just don't think this is the context that a Frye hearing is appropriate for." RP (Feb. 27, 2009) at 25-26.
[9] Gregory, 158 Wash.2d at 830, 147 P.3d 1201.
[10] Stone v. Southwest Suburban Sewer Dist., 116 Wash.App. 434, 438, 65 P.3d 1230 (2003) (questions of law reviewed de novo).
[11] In re Pers. Restraint of Young, 122 Wash.2d 1, 56, 857 P.2d 989 (1993) (citing Frye, 293 F. at 1014).
[12] Id. (quoting State v. Martin, 101 Wash.2d 713, 719, 684 P.2d 651 (1984)).
[13] Id. (quoting State v. Cauthron, 120 Wash.2d 879, 889, 846 P.2d 502 (1993)).
[14] 122 Wash.2d 1, 57, 857 P.2d 989 (1993).
[15] See, e.g., Commonwealth v. Dengler, 843 A.2d 1241, 1245 (Pa.Super.2004) (agreeing with out-of-state cases and holding "that psychological or psychiatric testimony of an expert at an SVP proceeding is not novel scientific evidence subject to Frye"), aff'd, 586 Pa. 54, 890 A.2d 372 (2005); Westerheide v. State, 767 So.2d 637, 657-58 (Fla.Dist.Ct.App.2000) ("The admission of expert testimony from psychologists and psychiatrists for the purpose of predicting future dangerousness caused by mental illness or abnormalities is nothing new or novel to the law."); People v. Ward, 71 Cal.App.4th 368, 373, 83 Cal.Rptr.2d 828 (1999) ("Kelly-Frye applies to cases involving novel devices or processes, not to expert medical testimony, such as a psychiatrist's prediction of future dangerousness or a diagnosis of mental illness."); see also In re Det. of Bolton, 343 Ill.App.3d 1223, 1228, 800 N.E.2d 128, 279 Ill.Dec. 286 (2003) (noting that "a psychologist's or psychiatrist's opinion as to an individual's future dangerousness is generally admissible when that opinion is based upon clinical observation or the evaluator's personal experience"); People v. Therrian, 113 Cal.App.4th 609, 615-16, 6 Cal.Rptr.3d 415 (2003) (Frye hearing not required where actuarial test was merely starting point and not sole basis for psychologist's opinion regarding offender's risk of recidivism); Logerquist v. McVey, 196 Ariz. 470, 1 P.3d 113, 123 (2000) ("Frye is inapplicable when a qualified witness offers relevant testimony or conclusions based on experience and observation about human behavior for the purpose of explaining that behavior.").
[16] See Post, 145 Wash.App. at 756-57 & n. 18, 187 P.3d 803 (collecting cases).
[17] RP (Sept. 18, 2009) at 490.
[18] 122 Wash.2d at 28, 857 P.2d 989 (emphasis omitted) (quoting Alexander D. Brooks, The Constitutionality and Morality of Civilly Committing Sexually Violent Predators, 15 U. PUGET SOUND L. REV. 709, 733 (1991-92)).
[19] Clerk's Papers at 733.
[20] DSM-IV-TR at 566.
[21] Young, 122 Wash.2d at 29, 857 P.2d 989 (referring to the American Psychiatric Ass'n Diagnostic and Statistical Manual of Mental Disorders (3d rev. ed. 1987) (DSM-III-R)).
[22] DSM-IV-TR at 576 ("This category is included for coding Paraphilias that do not meet the criteria for any of the specific categories. Examples include, but are not limited to, telephone scatologia (obscene phone calls), necrophilia (corpses), partialism (exclusive focus on part of body), zoophilia (animals), coprophilia (feces), klismaphilia (enemas), and urophilia (urine).").
[23] Young, 122 Wash.2d at 30 n. 6, 857 P.2d 989 (alteration in original) (quoting Gene G. Abel & Joanne-L. Rouleau, The Nature and Extent of Sexual Assault, Handbook of Sexual Assault: Issues, Theories and Treatment of the Offender 9, 19 (W.L. Marshall, et al. eds., 1990)).
[24] See Thorell, 149 Wash.2d at 756, 72 P.3d 708 (use of actuarial instruments to predict future dangerousness not subject to Frye; arguments against them "go to the weight of the evidence rather than its admissibility and are to be assessed under ER 702 and ER 703"). Berry does not challenge the evidence under ER 702 or ER 703.