

2015 JUN 15 AM 8:18

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Detention of<br>ROY DONALD STOUT, JR. | ) ) ) | No. 71343-4-I |
| STATE OF WASHINGTON, | ) ) | DIVISION ONE |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| ROY DONALD STOUT, JR. | ) ) | |
| Appellant. | ) | FILED: June 15, 2015 |

SCHINDLER, J. — Roy Donald Stout, Jr. appeals the trial court's denial of the CR 60(b)(11) motion to vacate his 2003 commitment as a sexually violent predator. Stout claims that because the psychiatric profession has rejected the paraphilia NOS[1] nonconsent diagnosis that his commitment was partly based on and his diagnoses have changed over time, he is entitled to a new commitment trial. Because Stout has failed to demonstrate extraordinary circumstances warranting the requested relief under CR 60(b)(11), we affirm.

FACTS

Roy Donald Stout, Jr. has an extensive criminal history that includes both sexual and nonsexual offenses beginning when he was 14-years-old. On multiple occasions,

---

[1] Not otherwise specified.

Stout approached strangers or casual acquaintances and engaged in—or attempted to engage in—sexual acts without their consent.

In 1997, Stout visited a casual acquaintance, fondled her, and attempted to kiss her while she resisted. The State charged Stout with indecent liberties. Stout pleaded guilty to burglary in the first degree and the court imposed a 75-month sentence.

In 2001, the State petitioned to have Stout committed as a sexually violent predator, alleging the burglary was sexually motivated. At the 2003 commitment trial, Dr. Richard Packer, the State's expert, testified that he diagnosed Stout with paraphilia NOS (nonconsent) and antisocial personality disorder. Based on Dr. Packer's diagnoses and his testimony concerning the risk assessment factors, the trial court found Stout was a sexually violent predator. The court committed him to the Washington State Department of Social and Health Services Special Commitment Center Program (SCC).

This court affirmed Stout's commitment on appeal. In re Det. of Stout, 128 Wn. App. 21, 114 P.3d 658 (2005), aff'd, 159 Wn.2d 357, 150 P.3d 86 (2007). Stout has consistently refused to participate in sex offender treatment while at the SCC. In subsequent annual reviews, including the reviews in 2010, 2011, and 2012, the trial court found the State met its burden of establishing probable cause that Stout continues to satisfy the criteria for a sexually violent predator. See RCW 71.09.090.

In July 2013, the State filed a motion to schedule a review on whether Stout continued to meet the criteria for a sexually violent predator. On August 22, Stout filed a CR 60(b)(11) motion to vacate the 2003 commitment order. At the hearing on the motion, Stout's attorney asserted the psychiatric community has now completely

2

rejected the diagnosis of paraphilia NOS (nonconsent) that formed a primary basis for Stout's 2003 commitment, and the "last nail in the coffin for Paraphilia NOS" was its recent rejection in the 2013 version of the Diagnostic and Statistical Manual of Mental Disorders[2] (DSM). Stout maintained the "huge changes in the science in these cases over the last twelve years" constituted extraordinary circumstances under CR 60(b)(11). Stout further claimed he was entitled to a new trial because the State's most recent evaluation concluded he continued to meet the criteria for a sexually violent predator based primarily on a diagnosis of antisocial personality disorder rather than the combination of paraphilia NOS (nonconsent) and antisocial personality disorder.

The trial court denied Stout's motion, concluding he failed to identify extraordinary circumstances warranting relief under CR 60(b)(11). Stout appeals.[3]

## ANALYSIS

CR 60(b) permits the trial court to relieve a party from a final judgment or order for several specified reasons, including mistake, inadvertence, surprise, excusable neglect, irregularity in obtaining a judgment, and a void judgment. Under CR 60(b)(11), the court may vacate an order for "[a]ny other reason justifying relief from the operation of the judgment." But CR 60(b)(11) is "a catchall provision, intended to serve the ends of justice in extreme, unexpected situations." In re Det. of Ward, 125 Wn. App. 374, 379, 104 P.3d 751 (2005). Relief under CR 60(b)(11) is limited to " 'extraordinary circumstances not covered by any other section of the rule.' " In re Marriage of Yearout,

---

[2] AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (5th ed. 2013).

[3] The trial court also rejected Stout's contention that he had established probable cause for a new commitment trial under chapter 71.09 RCW. On appeal, Stout does not challenge that portion of the trial court's decision.

41 Wn. App. 897, 902, 707 P.2d 1367 (1985) (quoting State v. Keller, 32 Wn. App. 135, 140, 647 P.2d 35 (1982)). The circumstances must relate to irregularities that are "extraneous to the action of the court or questions concerning the regularity of the court's proceedings." Yearout, 41 Wn. App. at 902. Errors of law do not justify vacating an order under CR 60(b)(11). In re Marriage of Furrow, 115 Wn. App. 661, 674, 63 P.3d 821 (2003).

We review the trial court's denial of a motion to vacate under CR 60(b) for a manifest abuse of discretion. In re Det. of Mitchell, 160 Wn. App. 669, 675, 249 P.3d 662 (2011). The trial court abuses its discretion "only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons." Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). Our review is limited to the trial court's decision denying Stout's motion to vacate, not the underlying commitment order that he seeks to vacate. See Bjurstrom v. Campbell, 27 Wn. App. 449, 450-51, 618 P.2d 533 (1980) (an appeal from the denial of a CR 60(b) motion "is limited to the propriety of the denial not the impropriety of the underlying judgment").

"In rare circumstances, a change in the law may create extraordinary circumstances, satisfying CR 60(b)(11)." Ward, 125 Wn. App. at 380. Stout does not allege or demonstrate any relevant change in the law. Rather, Stout relies on claims that the psychiatric community has completely rejected the validity of the paraphilia NOS (nonconsent) diagnosis in the years since his initial commitment and the assertion that the "agreement rate" of the State's experts in his diagnoses is "far below a reasonable degree of professional certainty." In essence, Stout's arguments are

4

allegations of newly discovered evidence. See CR 60(b)(3). Stout's arguments do not constitute extraordinary circumstances or irregularities extraneous to the action of the courts.

Challenges to the paraphilia NOS (nonconsent) diagnosis as a basis for sexual predator commitment are not new. Stout's brief on appeal relies heavily on a 2008 article criticizing the diagnosis. See Allen Frances, Shoba Sreenivasan, & Linda E. Weinberger, Defining Mental Disorder When It Really Counts: DSM-IV-TR[4] and SVP/SDP[5] Statutes, 36 J. Am. Acad. Psychiatry & Law, 375 (Nov. 3, 2008).

Further, long before Stout's motion to vacate, in 1993, our Supreme Court adopted the following observations in rejecting an analogous argument that a diagnosis of paraphilia NOS (nonconsent) was invalid because it was only a residual category in the then-current edition of the DSM:

> "In using the concept of 'mental abnormality' the legislature has invoked a more generalized terminology that can cover a much larger variety of disorders. Some, such as the paraphilias, are covered in the DSM–III–R[6]; others are not. The fact that pathologically driven rape, for example, is not yet listed in the DSM–III–R does not invalidate such a diagnosis. The DSM is, after all, an evolving and imperfect document. Nor is it sacrosanct. Furthermore, it is in some areas a political document whose diagnoses are based, in some cases, on what American Psychiatric Association ("APA") leaders consider to be practical realities. What is critical for our purposes is that psychiatric and psychological clinicians who testify in good faith as to mental abnormality are able to

---

[4] AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS: DSM-IV-TR (4th rev. ed. 2000).

[5] Sexually violent predator/sexually dangerous person.

[6] AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS: DSM-III-R (3rd rev. ed. 1987).

<u>identify sexual pathologies that are as real and meaningful as other pathologies already listed in the DSM.</u>"

In re Pers. Restraint of Young, 122 Wn.2d 1, 28, 857 P.2d 989 (1993)[7] (quoting Alexander D. Brooks, The Constitutionality & Morality of Civilly Committing Violent Sexual Predators, 15 U. PUGET SOUND L. REV. 709, 733 (1991-92)).

Stout argues Young is distinguishable because the court was not addressing a diagnosis that the DSM had expressly rejected. But contrary to Stout's argument, the court in Young clearly emphasized that the critical issue was not whether a particular diagnosis was included in or excluded from the DSM but, rather, whether the evidence established " '<u>sexual pathologies that are as real and meaningful as other pathologies already listed in the DSM.</u>' " Young, 122 Wn.2d at 28[8] (quoting Brooks, The Constitutionality & Morality of Civilly Committing Violent Sexual Predators, at 733). Stout cites no authority suggesting the DSM governs the diagnoses of mental abnormalities that permit the commitment of sexually violent predators.

More recently, this court reiterated the Young holding in rejecting the argument that the trial court must conduct a Frye[9] hearing before the State may offer a diagnosis of paraphilia NOS (nonconsent) as a basis for confinement. We noted Washington courts "have repeatedly upheld SVP commitments based upon" a diagnosis of paraphilia NOS (nonconsent). In re Det. of Berry, 160 Wn. App. 374, 379-80, 248 P.3d 592 (2011) (citing In re Det. of Post, 145 Wn. App. 728, 756-57 & n.18, 187 P.3d 803 (2008). Disputes among experts about the validity of the diagnosis go to the weight of the evidence, not its admissibility. Berry, 160 Wn. App. at 378-79, 382.

---

[7] Emphasis in original.

[8] Emphasis in original.

[9] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

6

Stout also contends he is entitled to a new commitment trial because the State's experts changed their diagnoses during subsequent annual review evaluations. At the initial commitment trial, the State's expert diagnosed Stout with a combination of paraphilia NOS (nonconsent) and antisocial personality disorder. In a 2013 evaluation, Dr. Daniel Yanisch diagnosed Stout with rule-out paraphilia NOS (nonconsent), polysubstance abuse—in a controlled environment, antisocial personality disorder, and borderline intellectual functioning.

Stout cites no authority requiring the State to rely solely on the initial diagnoses to satisfy its burden at annual review hearings to demonstrate he "continues to meet the definition of a sexually violent predator." RCW 71.09.090(2)(b). Our Supreme Court recently rejected a similar argument:

> [Petitioner] argues that because the State's experts originally testified he suffered from pedophilia and now the State's expert found insufficient evidence for that diagnosis, the State has not met its burden. His argument is unpersuasive. First, this court has affirmed commitment based on paraphilia NOS nonconsent and antisocial personality disorder, which are essentially [petitioner]'s remaining diagnoses. See [ ]Stout, 159 Wn.2d [at] 363 . . . . Second, we rejected a similar challenge to continued civil commitment after an insanity acquittal when the detainee's diagnosis changed in State v. Klein, 156 Wn.2d 102, 120-21, 124 P.3d 644 (2005). While we cautioned that " '[d]ue process requires that the nature of . . . commitment bear some reasonable relation to the purpose for which the individual is committed,' " we found sufficient connection from the "original diagnosis of 'psychoactive substance-induced organic mental disorder' . . . and the current diagnosis of polysubstance dependence" to justify continued commitment. Id. at 119-20 (first alteration in original) (quoting Foucha v. Louisiana, 504 U.S. 71, 79, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992)). We observed that "the subjective and evolving nature of psychology may lead to different diagnoses that are based on the very same symptoms, yet differ only in the name attached to it." Id. at 120-21. Similar principles apply here. Without more, the change from a diagnosis of pedophilia to a "rule out pedophilia" and hebephilia diagnosis is not sufficient to require a new evidentiary proceeding.

In re Pers. Restraint of Meirhofer, 182 Wn.2d 632, 644, 343 P.3d 731 (2015).

7

Stout makes no showing that any changes in his diagnoses were not reasonably related to his original commitment or that they constituted extraordinary circumstances under CR 60(b)(11). Stout does not demonstrate that ongoing disputes about the validity of the paraphilia NOS (nonconsent) diagnosis, exclusion of the diagnosis from the DSM, or the changes in his diagnoses over time constitute extraordinary circumstances. The trial court did not abuse its discretion in denying his motion to vacate under CR 60(b)(11).[10]

Affirmed.

WE CONCUR:

---

[10] Because Stout failed to demonstrate extraordinary circumstances, we do not address the State's contention that Stout's CR 60(b)(11) motion was not filed "within a reasonable time" and, therefore, untimely.

8