# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED
2017 APR -3 AM 8: 54

| | | |
|---|---|---|
| In re the Detention of Donald Herrick | ) | No. 69818-4-I |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD HERRICK, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 3, 2017 |
| | ) | |

VERELLEN, C.J. — Donald Herrick appeals a pretrial order compelling penile plethysmograph (PPG) and polygraph testing as part of a sexually violent predator (SVP) civil commitment evaluation. He argues that the statute granting trial courts discretion to compel PPG testing is unconstitutional on its face and particularly as applied to him. Herrick fails to meet his burden of proving that RCW 71.09.050(1) is unconstitutional beyond a reasonable doubt. Herrick also argues that RCW 71.09.050(1) was unconstitutionally amended in 2012 to permit the court to compel PPG testing in violation of the single subject rule of article II, section 19 of the Washington Constitution. But the title of Senate Bill 6493 is general, and rational unity among the matters within the bill exist, including SVP experts and testing.[1] Therefore, we affirm.

---

[1] S.B. 6493, 62nd Leg., Reg. Sess. (Wash. 2012).

## FACTS

The underlying facts are not in dispute. In 1997, Herrick was convicted of rape in the first degree. He was released from incarceration for that offense in September 2006. Three months after his release, Herrick stalked a 16-year-old. He pleaded guilty to voyeurism and was sentenced to 22 months. Following his release, Herrick entered outpatient sexual deviancy treatment with Northwest Treatment Associates. In March 2009, as part of his treatment, he participated in PPG testing.

In February and June 2010, Herrick violated his conditions of community placement by engaging in stalking. He was ordered to serve 120 days' confinement for the violations.

In November 2010, in anticipation of Herrick's release, the State petitioned to civilly commit him as an SVP under chapter 71.09 RCW. The petition identified Herrick's prior sexually violent offenses and alleged that he suffers from a mental abnormality and/or personality disorder that makes him likely to engage in predatory acts of sexual violence if not confined in a secure facility. Prior to filing the petition, the State's expert, psychologist Dr. Brian Judd, completed a clinical evaluation record review. Dr. Judd opined that Herrick met the diagnostic criteria for paraphilia not otherwise specified (nonconsent), alcohol abuse, cannabis abuse, voyeurism (provisional), and antisocial personality disorder. Of these disorders, Dr. Judd determined that paraphilia not otherwise specified (nonconsent) met the criteria for abnormality as defined in chapter 71.09 RCW. His opinion was based on the predicate offenses, the 2009 PPG testing, which demonstrated a preference for coercive sexuality, and actuarial testing, which predicted a high risk of recidivism.

2

In January 2011, Herrick stipulated to the existence of probable cause and agreed to undergo an evaluation by the State's expert.[2] He was ordered to be held at the Special Commitment Center for custodial detention and evaluation.

Dr. Judd completed an updated clinical evaluation, including an interview of Herrick and a records review. In April 2012, Dr. Judd provided an addendum, again opining that Herrick met the definition of an SVP, relying in part on the results of the 2009 PPG, which he characterized as detecting a clear arousal to humiliation rape of an adult female and rape of a female minor, despite apparent attempts to suppress arousal.

In May 2012, defense expert Stephen Jensen, M.A., criticized Dr. Judd's report as it related to the 2009 PPG. Mr. Jensen concurred with the Northwest Treatment Associates evaluator, who found the PPG inconclusive:

> The [PPG] assessment was conducted appropriately and followed . . .
> standards. The conclusions by the evaluators appear to accurately reflect
> the assessment data. The data was correctly assessed as "inconclusive,"
> which indicates it is not clinically predictive. Dr. Judd incorrectly
> concluded that this data reflected a preference for aberrant sexual
> behavior, while in reality no preference was clear to any form of sexual
> behavior.[3]

In December 2012, the State moved for an order requiring Herrick to submit to a PPG and a specific-issue polygraph as part of the evaluation in anticipation of trial. Dr. Judd requested the PPG and a follow-up interview to provide the most current information possible:

---

[2] On February 15, 2013, the State filed an amended petition, alleging an additional recent overt act: that in December 2009, while under conditions of community placement, Herrick engaged in stalking behaviors towards a female employee of Work Source.

[3] Clerk's Papers (CP) at 694.

Mr. Herrick has a history of apparently attempting to manipulate and suppress his arousal when assessed on the PPG and has previously made efforts to obtain information on how to dissimulate on the PPG. As such, I believe that independent verification of Mr. Herrick's participation in the PPG consistent with the examiner's instructions is necessary to ensure that Mr. Herrick does not use countermeasures to minimize deviant arousal during the PPG. This can be assessed through a post-PPG specific-issue polygraph administered immediately following the PPG.[4]

Dr. Judd's statement about Herrick's previous "efforts to obtain information on how to dissimulate on the PPG" referred to an August 2010 recorded jail phone call in which Herrick asked his girlfriend to research ways to "beat," "cheat," or "win" the PPG.[5]

On January 22, 2013, the trial court granted the State's motion to compel PPG and specific-issue polygraph testing. Herrick moved for discretionary review of the order. A court commissioner initially denied review, but a panel from this court granted Herrick's motion to modify the ruling.

## ANALYSIS

Herrick challenges the constitutionality of RCW 71.09.050(1). Constitutional challenges are questions of law that are reviewed de novo.[6] "A statute is presumed constitutional, and the party challenging it bears the burden of proving it is unconstitutional beyond a reasonable doubt."[7]

---

[4] CP at 686.

[5] CP at 701, 703-04; CP at 678, n.19.

[6] State v. McCuistion, 174 Wn.2d 369, 387, 275 P.3d 1092 (2012).

[7] In re Det. of Bergen, 146 Wn. App. 515, 524, 195 P.3d 529 (2008).

4

*RCW 71.09.050(1) Is Constitutional On Its Face*

Herrick argues that RCW 71.09.050(1) is unconstitutional on its face because it violates the precommitment detainee's substantive due process right to privacy. We disagree.

The Washington Constitution places greater emphasis on privacy than the federal constitution, but the State can reasonably regulate privacy rights to protect the public.[8] Sex offenders have reduced privacy interests because they threaten public safety.[9] In comparison, the public has "[g]rave public safety interests" that outweigh the "truncated" privacy interests of sex offenders.[10] The State's compelling interest in "both treating sex predators and protecting society from their actions," therefore, is "irrefutable."[11] Herrick recognizes that "pre-commitment detainees retain a limited right to privacy and due process."[12]

Herrick claims that "RCW 71.09.050(1) is unconstitutional on its face because it provides for compulsory testing simply upon request" by the State and "the statute does not require a heightened level of scrutiny."[13] Herrick misreads the statute.

RCW 71.09.050(1) provides:

Within forty-five days after the completion of any hearing held pursuant to RCW 71.09.040, the court shall conduct a trial to determine whether the

---

[8] In re Det. of Williams, 163 Wn. App. 89, 97, 264 P.3d 570 (2011) (SVP evaluation under former RCW 71.09.040 (2009) did not violate appellant's privacy rights under Washington Constitution, art. I, § 7).

[9] Id.

[10] In re Det. of Campbell, 139 Wn.2d 341, 356, 986 P.2d 771 (1999).

[11] In re Det. of Young, 122 Wn.2d 1, 26, 857 P.2d 989 (1993).

[12] Appellant's Br. at 10.

[13] Id. at 12, 14; Reply Br. at 1.

person is a sexually violent predator. . . . The prosecuting agency shall have a right to a current evaluation of the person by experts chosen by the state. The judge *may* require the person to complete any or all of the following procedures or tests *if requested by the evaluator*. . . . (c) plethysmograph testing; and (d) polygraph testing.[14]

Contrary to Herrick's assertions, this statute does not allow PPG testing whenever requested by the State. The statute applies only in the context of determining whether the person named in the SVP petition is an SVP. Significantly, this statutory evaluative process occurs after the completion of the probable cause hearing held pursuant to RCW 71.09.040 and a finding of probable cause. Also, PPG and polygraph testing must be "requested by the evaluator," who must:

(1) Have demonstrated expertise in conducting evaluations of sex offenders, including diagnosis and assessment of reoffense risk;

(2) Have demonstrated expertise in providing expert testimony related to sex offenders or other forensic topics; and

(3) Provide documentation of such qualification.[15]

Finally, the court, not the State, makes the decision to allow PPG testing, and its decision is discretionary: "The judge *may* require the person to complete any or all of the following procedures or tests."[16] Thus, the statue does not give the State unfettered authority to order PPG testing.

Herrick relies heavily on <u>United States v. Weber</u>.[17] <u>Weber</u> concerned a challenge to a federal sentence requiring PPG testing as a condition of supervised

---

[14] (Emphasis added.)

[15] WAC 388-880-033 (rule establishing evaluator qualifications).

[16] RCW 71.09.050(1).

[17] 451 F.3d 552 (9th Cir. 2006).

release.[18] The appellant objected to PPG testing based on "*statutory* grounds-that such testing is not reasonably related to the goals of supervised release."[19] The Weber court mentioned "heightened procedural protections" but did not analyze a constitutional challenge; it interpreted a federal sentencing statute, 18 U.S.C. § 3583.[20] Weber held that before PPG testing can be imposed as a term of supervised release under § 3583, a district court must make an individualized determination that the testing is necessary.[21] Weber "express[es] no opinion on the question whether requiring plethysmograph testing as a condition of supervised release amounts to a substantive due process violation."[22] Although Weber expressed concern about the invasive nature of PPG testing, it acknowledged that PPG testing "has become routine in the treatment of sexual offenders and is often imposed as a condition of supervised release."[23]

Further, Herrick fails to demonstrate how Weber, which addressed PPG testing as a condition of release, is applicable to civil commitment proceedings under chapter 71.09 RCW. RCW 71.09.050(1) explicitly authorizes PPG testing. Herrick fails to provide authority requiring a court to make an individualized determination regarding the

---

[18] Id. at 555-56.

[19] Id. at 563, n.14.

[20] Id. at 557. Similarly, we do not find any support in United States v. Cheever, 2016 WL 3919792, at *11 (D. Colo. July 18, 2016), aff'd, 2016 WL 7367766 (10th Cir. Dec. 20, 2016) (applying a federal sentencing statute and refusing to include PPG testing as a condition of supervised release).

[21] Id. at 569-70.

[22] Id. at 563, n.14.

[23] Id. at 554.

necessity of PPG testing in SVP civil commitment proceedings.[24] Therefore, Weber is not compelling.

Herrick fails to carry his burden of showing that RCW 71.09.050(1) is facially unconstitutional beyond a reasonable doubt.

*RCW 71.09.050(1) Is Constitutional As Applied To Herrick*

In the alternative, Herrick argues that RCW 71.09.050(1) is unconstitutional as applied to him. He argues that the "court's blanket finding that Washington courts have found PPG tests reliable in a forensic setting is not sufficiently specific to justify PPG testing without reference to the specific individual and the facts of his case."[25]

But here, the court found "based on the evidence before the Court, there is good cause to require" Herrick to submit to PPG and polygraph testing.[26] The court explained its reasons for ordering the testing: (1) the previous PPG test was conducted before the SVP petition was filed and was conducted for treatment as opposed to evaluation purposes, (2) the record reflected efforts by Herrick to manipulate the PPG results, (3) the Supreme Court in In re the Detention of Halgren[27] approved the use of a PPG for diagnostic purposes, (4) the Supreme Court's observation in State v. Riles[28] indicates that the PPG is an effective method for diagnosing sex offenders, (5) the statute

---

[24] "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent research, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

[25] Appellant's Br. at 16.

[26] CP at 354.

[27] 156 Wn.2d 795, 806-07, 132 P.3d 714 (2006).

[28] 135 Wn.2d 326, 352, 957 P.2d 655 (1998).

provides for the testing, and (6) Dr. Judd, the State's expert, requested it as part of his evaluation.[29] Accordingly, Herrick's as applied challenge to RCW 71.09.050(1) fails.

### Reliability of PPG Testing

Herrick challenges the reliability of PPG testing. Although Herrick identifies criticisms of PPG testing, he does not establish that it is no longer accepted in the scientific community or authorized in case law.

Herrick appears to attack the trial court's reliance on Halgren in finding good cause to order the PPG testing. In Halgren, our Supreme Court unequivocally held that PPG testing is useful as part of a diagnostic process.[30] Herrick argues this court should reject Halgren because the court relied on case law addressing PPG testing in a treatment setting rather than in a forensic setting. But we are bound to follow the express decisions of our Supreme Court.[31]

Further, our legislature has expressly authorized the use of PPG testing as part of the evaluative process.[32]

---

[29] Report of Proceedings (Jan. 22, 2013) at 26-30.

[30] Halgren, 156 Wn.2d at 807; see also Riles, 135 Wn.2d at 352 ("Plethysmograph testing is regarded as an effective method for diagnosing and treating sex offenders."); cf. State v. Johnson, 184 Wn. App. 777, 780, 340 P.3d 230 (2014) (holding PPG testing is a valid condition of community placement "'within the context of a comprehensive evaluation or treatment process'") (quoting Riles, 135 Wn.2d at 352); State v. Castro, 141 Wn. App. 485, 494, 170 P.3d 78 (2007) (holding that PPG testing is a valid sentencing condition and "is regarded as a 'treatment device' for diagnosing and treating sex offenders") (citing Riles, 135 Wn.2d at 345).

[31] 1000 Virginia Ltd. P'Ship v. Vertecs Corp., 158 Wn.2d 566, 590, 146 P.3d 423 (2006).

[32] RCW 71.09.050(1); see In re Det. of Hawkins, 169 Wn.2d 796, 803, 238 P.3d 1175 (2010) (noting that the legislature deems an evaluation method permissible when a statute specifically authorizes the method).

In essence, Herrick alleges the PPG should not be a generally accepted diagnostic test, but our Supreme Court has recognized that it is. His challenge to the reliability goes to the weight of the evidence, not its admissibility.[33] The weight of evidence is an issue reserved for the finder of fact.[34]

Therefore, Herrick's challenge to the reliability of PPG testing fails.

*Article II, Section 19*

Herrick argues Senate Bill 6493 violated the single subject rule of article II, section 19 of the Washington Constitution. Section 19 reads, in part, "No bill shall embrace more than one subject." "The purpose of the single subject clause is to prohibit the enactment of an unpopular provision pertaining to one subject by attaching it to a more popular provision whose subject is unrelated."[35]

In determining whether an enactment relates to one general subject or multiple specific subjects, Washington courts look to the title of the enactment for guidance.[36] "A general title is broad, comprehensive, and generic as opposed to a restrictive title that is specific and narrow."[37] The title of Senate Bill 6493 is general: "AN ACT Relating to sexually violent predator civil commitment cases."[38]

---

[33] See In re Det. of Berry, 160 Wn. App. 374, 382, 248 P.3d 592 (2011).

[34] State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

[35] City of Burien v. Kiga, 144 Wn.2d 819, 824, 31 P.3d 659 (2001).

[36] Filo Foods, LLC v. City of SeaTac, 183 Wn.2d 770, 782, 357 P.3d 1040 (2015); Washington Ass'n of Neigh. Stores v. State, 149 Wn.2d 359, 368, 70 P.3d 920 (2003).

[37] City of Burien, 144 Wn.2d at 825.

[38] 1 SENATE JOURNAL, 62nd Leg., Reg. Sess., at 132 (Wash. 2012).

Where a general title is used, "[o]nly rational unity among the matters need exist."[39] "Rational unity exists when the matters within the body of the initiative are germane to the general title and to one another."[40] Here, Senate Bill 6493 addresses several subtopics, but they all relate to the subject of SVP civil commitment cases and to each other.

Herrick claims the amendment to RCW 71.09.050(1) granting discretion to trial courts to order evaluative procedures is unrelated to the other provisions of the bill. We disagree. Senate Bill 6493 transferred financial responsibility for SVP evaluations from the Department of Social and Health Sciences (DSHS) to the prosecuting agency and the Office of Public Defense (OPD), and, at the same time, removed DSHS's rule-making authority over evaluators and evaluation procedures.[41] Who decides to approve a PPG evaluation is part of that procedure. Because the provision Herrick challenges was rationally related to the transfer of authority from DSHS to OPD and the prosecuting agency, it has "rational unity" with the general subject of "sexually violent predator civil commitment cases."

Herrick relies on In re Detention of Hawkins.[42] Hawkins held that the legislature could not have intended to include polygraph examinations in the mandatory evaluation under former RCW 71.09.040(4) (2009) without explicitly saying so.[43] But Hawkins did

---

[39] Filo Foods, 183 Wn.2d at 782 (citing City of Burien, 144 Wn.2d at 825-26).

[40] Id. at 782-83 (citing City of Burien, 144 Wn.2d at 826).

[41] Effective July 1, 2012.

[42] 169 Wn.2d 796, 238 P.3d 1175 (2010).

[43] Hawkins, 169 Wn.2d at 803.

11

not address PPG testing and left the door open to other testing methods.[44] In any event, RCW 71.09.050(1) indisputably shows that the legislature intended to make polygraph and other types of testing available to evaluators.

We conclude that RCW 71.09.050(1) was not unconstitutionally amended in violation of article II, § 19.

Affirmed.

WE CONCUR:

_____

_____

_____

---

[44] Id. at 803-04 ("This conclusion, as the foregoing analysis makes clear, applies only to polygraph examinations; the failure of the statute to enumerate other methods of conducting an examination does not necessarily preclude their use.").